**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| COASTAL FAMILY CHURCH, JERALD W. TILTON, MARIA A. TILTON, VALERIE A. PALMER, | CASE NO. 26-652 |
| Plaintiffs, | |
| v. | **VERIFIED COMPLAINT** |
| THE CIRCUIT COURT OF THE 7TH JUDICIAL CIRCUIT IN AND FOR FLAGLER COUNTY, FLORIDA, | |
| Defendant. | DEMAND FOR JURY TRIAL |

*"Neither a state nor the Federal Government can … force nor influence a person to go to or remain away from church against his will."*[1]

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND <u>PERMANENT INJUNCTIVE RELIEF, AND DAMAGES</u>**

For their Verified Complaint against the Circuit Court of the 7th Judicial

Circuit in and for Flagler County, Plaintiffs allege and aver as follows:

---

[1] *Everson v. Bd. of Educ. of Ewing Tp.*, 330 U.S. 1, 15 (1947)

## **INTRODUCTION**

1.      No reasonably prudent man pursues or relishes in finding himself in a situation requiring filing a federal lawsuit against a state court or its orders. Indeed, Plaintiffs are fully cognizant of that a judge "should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption," *Pierson v. Ray*, 386 U.S. 547, 553 (1967), but circumstances do arise where—as here—Article III courts are required to adjudicate claims arising from state courts orders prohibiting expressive activities constitutionally protected under the First Amendment. *See, e.g.*, *Alexander v. United States*, 509 U.S. 544 (1993); *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *Near v. Minnesota*, 283 U.S. 697 (1931); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994).

2.      In each of those cases, the Article III tribunal was faced with a state-court order imposing a prior restraint on activities and expression unquestionably protected by the First Amendment. And when presented with such an unconstitutional order, the court has "a virtually unflagging obligation to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024). Exercising that virtually unflagging obligation requires adjudication of state-court orders forbidding the exercise of First Amendment activity prior to it occurring. *Alexander*, 509 U.S. at 550 ("The term prior restraint is used to describe administrative and judicial

2

orders *forbidding* certain communications when issued in advance of the time that such communications are to occur. . . . *Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.*" (emphasis added)). In fact, when faced with a near identical challenge to a state-court injunction, the Supreme Court has explicitly noted it has an obligation to determine "the constitutionality of the state court's injunction." *Madsen,* 512 U.S. at 762; *See also Org. for a Better Austin,* 402 U.S. at 415 ("We granted the writ in this case to consider the claim that an order of the Circuit Court of Cook County, Illinois, enjoining petitioners from distributing leaflets anywhere in the town of Westchester, Illinois, violates petitioners' rights under the Federal Constitution.").

3.    Plaintiffs pray unto the Court to likewise resolve the constitutionality of a state-court injunction prohibiting them from attending religious worship services, assembling together for such religious services, from engaging in constitutionally protected speech and expression, and for otherwise violating the First Amendment in an order that constitutes a prior restraint.

4.    On January 23, 2026, the Circuit Court of the 7th Judicial Circuit in and for Flagler County, Florida ("Defendant" or the "State Court") issued a temporary injunction ("State Court Order") shuttering the doors of Coastal

Family Church and forcing the elders of Coastal Family Church ("Plaintiffs," "Elders," or "Coastal Family Church"), on an emergency basis to inform each congregant that a Florida court had prohibited them from gathering together on Sunday for religious services, from reading the Scripture, praying, singing hymns, communal worship, the taking of communion, fellowship, and even holding a memorial service for a deceased member of the Church.

**URGENCIES JUSTIFYING TEMPORARY RESTRAINING ORDER**

5.     In their prayer for relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Coastal Family Church and its elders seek a TRO restraining enforcement of the temporary injunction, which prohibits Coastal Family Church from all assembly, speech, and religious exercise, including hosting religious services, the elders from congregating for worship and caring for their Church flock, the congregants from praying to and praising the Lord as a church community, and the Church's pastors from sharing the gospel during in person religious services.

6.     The state-court injunction, temporarily enjoining Plaintiffs from engaging in religious worship services and other activities protected by the First Amendment, "by effectively barring many from attending religious services, strike[s] at the very heart of the First Amendment's guarantee of religious liberty." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19–20 (2020).

4

7.    As a result of the state-court injunction, the elders have been forced to entirely close the doors of Coastal Family Church, leaving the Flagler Community without a place to engage in religious worship services and to assemble together to exercise their sincerely held religious convictions.

8.    Worse still, as a result of the state-court injunction, on January 25, 2026, February 15, 2026, February 22, 2026, February 28, 2026, March 8, 2026, March 15, 2026, and March 22, 2026, the elders of Coastal Family Church have had to devote their Sunday mornings to standing outside of the Church to inform congregants, visitors, new believers, and even those exploring Christianity for the first time, that a Florida court had prohibited them from gathering for religious services, the reading of Scripture, prayer, communal worship, communion, fellowship, and any form of religious assembly.

9.    On Sunday, January 25, 2026, and Sunday, February 15, 2026, officers of the local police department even came to Coastal Family Church to ensure the Church was not hosting religious services.

10.    Coastal Family Church and its elders have suffered, are suffering, and will continue to suffer the irreparable constitutional harm of being forced to turn away religious congregants, visitors, and new believers in violation of their belief that Scripture requires letting in "whosoever will" come. *Revelations* 22:17.

11.   Plaintiffs have suffered, are suffering, and will continue to suffer the irreparable constitutional harm of being forced to turn away those exploring Christianity for the first time in violation of their belief that Scripture requires them to "[a]ccept one another, then, just as Christ accepted you, in order to bring praise to God." *Romans* 15:7.

12.   Plaintiffs have suffered, are suffering, and will continue to suffer the irreparable constitutional harm of being forced to cancel memorial services for congregants that have passed away, men's and women's ministry events, young adult ministry meetings, youth ministry meetings, weekly bible school programs, and bible studies.

13.   The state-court injunction is an unlawful prior restraint prohibiting Coastal Family Church, its elders, and its religious congregants from speech, assembly, and religious exercise.

14.   "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

15.   Given the blatant unconstitutionality of the state-court injunction, Pastor Palmer sought emergency relief from the Circuit Court for the Seventh Judicial Circuit in and for Flagler County, Florida. A true and correct copy of Pastor Palmer's Emergency Motion for Relief from the Court is attached hereto as **EXHIBIT A** and is incorporated herein.

6

16.    The circuit court did not respond to Pastor Palmer's emergency motion and still has never issued any order concerning that emergency motion.

17.    Pastor Palmer then sought emergency relief from the Fifth District Court of Appeal. Initially, the Fifth District "granted in part solely to allow this Court to filly consider the merits of the matters raised in the motion." A true and correct copy of the Fifth District Court of Appeal Order dated January 30, 2026, is attached hereto as **EXHIBIT B** and incorporated herein. The Fifth DCA provided:

> If this Court determines the temporary injunction before us was erroneously issued, the legal and actual harm of being prohibited the right to assembly together and freely exercise their sincerely held religious beliefs would be grievous and reach constitutional dimensions. Being deprived of this fundamental right – for even one additional Sunday – would do irreparable harm to Appellant and its congregants.

(Ex. B.)

18.    The Fifth DCA quickly changed its tune, issuing another order on February 13, 2026, denying Pastor Palmer's motion for a stay and reinstituting the state-court injunction, prohibiting Coastal Family Church, its elders, and its religious congregants from gathering for religious services. A true and correct copy of the Fifth District Court of Appeal Order dated February 13, 2026, is attached hereto as **EXHIBIT C** and incorporated herein.

19.    Coastal Family Church and its Elders were given just a single day to prepare, yet again, to cancel religious services, and to find an alternate

7

location for a Christian marriage event planned for 160 participants who had reserved and confirmed to attend the event at the church. A true and correct copy of Pastor Palmer's Declarations are attached hereto as **EXHIBIT D** and incorporated herein.

20.    The following week, a Congregant of Coastal Family Church passed away, and – as a result of the state-court injunction – Pastor Palmer was forced to inform the family that they were unable to hold a memorial service at the Church. (Ex. D.) Thus, not only has state-court injunction prohibited Coastal Family Church, its elders, and its religious congregants from religious services, but now it is prohibiting them from exercising their religious beliefs to properly mourn the dead.

21.    Pastor Palmer sought emergency relief from the Supreme Court of Florida.

22.    The Supreme Court of Florida initially denied jurisdiction over this matter, claiming its all-writs jurisdiction was somehow unavailable despite clear precedent to the contrary. A true and correct copy of the Supreme Court of Florida Disposition Decision dated February 23, 2026, is attached hereto as **EXHIBIT E** and incorporated herein. The Supreme Court immediately closed the case.

23. Pastor Palmer re-filed his application with the Florida Supreme Court, outlining the explicit bases for its all-writs jurisdiction and again sought emergency relief from the Court.

24. The Supreme Court of Florida did not respond to Pastor Palmer's request for relief and to this day still has not responded.

25. The state-court injunction effectively punishes Coastal Family Church, its elders, and its religious congregants for speech, assembly, and religious exercise, including attendance at religious worship.

26. Coastal Family Church, its elders, and its religious congregants have already been forced to violate their sincere religious beliefs that they are not to forsake the assembling of themselves together." *Hebrews* 10:25.

27. Coastal Family Church, its elders, and its religious congregants have already faced the arm of the State in badges showing up to ensure they did not engage in religious worship, read Scripture, receive communion, or fellowship.

28. Coastal Family Church, its elders, and its religious congregants, have now been forced to turn away mourners seeking to properly honor their loved one's passing, also infringing their sincerely held religious beliefs that "[p]recious in the sight of the Lord is the death of His saints." *Psalm* 116:15.

29. Every bit of this injury is not only eternally significant to Coastal Family Church, its elders, and its religious congregants, but it is

9

constitutionally irreparable. Indeed, "[t]here can be no question that the challenged [TIO] restrictions, if enforced, will cause irreparable harm." *Catholic Diocese*, 592 U.S. at 19.

30.    "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." *Elrod. v. Burns*, 427 U.S. 347, 373 (1976).

31.    And, when "the great majority of those who wish to attend [Coastal Family Church] will be barred," *id.* at 67-68, as is true under the state-court injunction, irreparable harm is unquestionable.

32.    Coastal Family Church, its Elders, and religious congregants have suffered, are suffering, and will continue to suffer unconscionable and unconstitutional injury as a result of the state-court injunction.

33.    Each and every day that passes while Coastal Family Church, its elders, and its religious congregants are subject to the state-court injunction, they are losing their First Amendment rights to assemble for religious services, to exercise their sincerely held religious beliefs, and to otherwise engage in constitutionally protected activities.

34.    A TRO must be issued immediately to prevent further irreparable injury that will be felt again this Sunday, March 21, 2026, and every day that the state-court injunction remains in effect. For that reason, Plaintiffs

10

respectfully request relief by Saturday, March 28, 2026. A temporary restraining order should issue.

<strong><u>NATURE OF THE ACTION</u></strong>

35.    This is a civil rights action brought pursuant to 42 U.S.C. §1983 challenging the constitutionality, facially and as applied, of the circuit court's January 22, 2026, Order Granting Plaintiff's Motion for Temporary Injunctive Relief, which serves as an unconstitutional prior restraint on Plaintiff's First Amendment rights to speech, assembly, and religious exercise, and the Fourteenth Amendment Equal Protection Clause.

36.    Flagler Square-JAX, Inc., operated by Harry H. Harrison ("Harrison"), the owner of Units 2 and 3 of the Flagler Square commercial condominium ("Flagler Square"), displayed interest in but was unsuccessful in purchasing 2501-A Moody Boulevard, Unit One, Flagler Beach, FL 32136 ("Unit 1"), the sole remaining unit of Flagler Square, which it did not own. A true and correct copy of the Don Rosenthal Email Communication dated November 26, 2024, is attached hereto as **EXHIBIT F** and incorporated herein.

37.    Instead, Pastor Roderick James Palmer purchased the property and placed it in a trust for Coastal Family Church, the trust's sole beneficiary. A true and correct copy of the Commercial Contract for the sale of 2501-A

11

Moody Boulevard, Unit One, Flagler Beach, FL 32136, is attached hereto as **EXHIBIT G** and incorporated herein.

38.    Shortly thereafter, Harrison sued Roderick James Palmer, Trustee of the 2501 Moody Blvd. Land Truste Agreement dated February 7, 2025 ("Pastor Palmer"), seeking an injunction to bar the Church from use of the property for all assembly, speech, and religious exercise, including religious worship, which it refers to as "public assembly." A true and correct copy of Harrison's Complaint for Injunctive Relief and Declaratory Judgement dated August 28, 2025, is attached hereto as **EXHIBIT H** and incorporated herein.

39.    On September 24, 2025, Flager Square-JAX, Inc. sought, and the Court granted, a temporary injunction that shuttered the doors of Coastal Family Church to prevent alleged parking congestion that *may* exist if the church were to expand from 564 seats to 2,401 seats sometime in the future. A true and correct copy of the Order Granting Harrison's Motion for Temporary Injunctive Relief Issued January 23, 2026, is attached hereto as **EXHIBIT I** and incorporated herein. Additionally, for the Court's convenience, true and correct copies of the following relevant state-court proceedings and pleadings are attached hereto as **EXHIBIT J** (Harrison's Motion for Temporary Injunctive Relief), **EXHIBIT K (**Pastor Palmer's Response in Opposition to the Motion for Temporary Injunctive Relief), **EXHIBIT L** (Harrison's Reply to the Response in Opposition to the Motion for Temporary Injunctive Relief), and

12

**EXHIBIT M** (Transcript of Hearing regarding the Motion for Temporary Injunctive Relief), and all such exhibits are incorporated herein.[2]

40.    Despite all of the pleadings and the state-court defendants' assertions that the action was barred by the First Amendment, the circuit court entered an injunction that, "by effectively barring many from attending religious services, strike[s] at the very heart of the First Amendment's guarantee of religious liberty." *Catholic Diocese*, 592 U.S. at 19.

41.    As a result of the state-court injunction and facing the extraordinary weight of contempt, Coastal Family Church and its elders have been forced to inform religious congregants, visitors, new believers, and those exploring Christianity for the first time that a Florida court has prohibited them from gathering together on Sunday for religious worship services.

42.    As a result of the state-court injunction, Plaintiffs and all members of Coastal Family Church face the crippling punishment of contempt and sanction for merely attempting to exercise their constitutionally protected First Amendment rights and sincerely held religious beliefs.

43.    To make matters worse, assuming Harrison feared the horrors of Floridians gathering for religious services, it sent representatives from HHH

---

[2] Plaintiffs affix these exhibits for background and to fully articulate the story of what led to the state-court injunction that is the subject of this action. With this action, Plaintiffs are not collaterally attacking the underlying proceedings.

Management ("HHH"), a company also operated by Harry H. Harrison who serves as the companies Director, to ensure that no Floridian darkened the door of Coastal Family Church.

44. On January 25, 2026, at the time Coastal Family Church's congregants would ordinarily gather for religious worship services on Sunday morning, a white HHH truck entered the parking lot accompanied by three police vehicles. (Ex. D.)

45. The HHH representative informed the elders of Coastal Family Church that he had contacted Florida law enforcement officers to ensure that they would enforce the state-court injunction and guarantee no one gathered for religious worship services. (Ex. D.)

46. Despite the fact that the state-court injunction is entirely unconstitutional, the elders informed the police officers that they were in compliance with the order and that Coastal Family Church was not hosting religious services. (Ex. D.)

47. At Pastor Palmer's request, Florida police toured the Church at the request of the pastor to verify that Coastal Family Church was not violating the state-court injunction. Entering the facility the Florida police found empty seats in the Church. (Ex. D.)

48. Below is the scene in the parking lot of Coastal Family Church on Sunday, January 25, 2026:

14



(Ex. D.)

49.    As a result of the state-court injunction, "the hand of the law [was] laid on the shoulder of a minister," in Florida for desiring to engage in religious exercise, religious worship services, and ministry. *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953).

50.    The First Amendment plainly prohibits this, and it is not "in the competence of the court under our constitutional scheme to approve, disapprove, classify, regulate, or in any manner control sermons delivered at religious meetings." *Id.*

15

## **PARTIES**

51.    Plaintiff, Coastal Family Church, is a non-profit corporation incorporated in the State of Florida and is the body of Believers that has been subjected to closure because of the state-court injunction that is the subject of the litigation against its Pastor Rod Palmer.

52.    Plaintiff, Jerald W. Tilton, is a member and elder of Coastal Family Church that has been prohibited from exercising her sincerely held religious beliefs at Coastal Family Church as a result of the state-court injunction in this matter.

53.    Plaintiff, Maria A. Tilton, is a member and elder of Coastal Family Church that has been prohibited from exercising her sincerely held religious beliefs at Coastal Family Church as a result of the state-court injunction in this matter.

54.    Plaintiff, Valerie A. Palmer, is a member and elder of Coastal Family Church that has been prohibited from exercising her sincerely held religious beliefs at Coastal Family Church as a result of the state-court injunction in this matter.

55.    Defendant, The Circuit Court of the 7th Judicial Circuit in and for Flagler County, Florida, issued the temporary injunction that is the subject of this action. Defendant may be sued under 42 U.S.C. §1983.

## JURISDICTION AND VENUE

56.    This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. §1983.

57.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343.

58.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Coastal Family Church's claims occurred in the Middle District of Florida, specifically the City of Flagler Beach, Florida.

59.    This Court is authorized to grant declaratory judgment under the Declaratory Judgement Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant a temporary restraining order and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

60.    This Court is authorized to grant Coastal Family Church's and its elders' prayers for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. §1988.

## GENERAL ALLEGATIONS

**A.    The background of the purchase of Coastal Family Church property and HHH's religious hostility and efforts to prevent them from doing so.**

61.    Coastal Family Church was interested in purchasing Unit 1, but use of the property as a church required a special zoning exception from the City of Flagler Beach's Commission, because Unit 1 was in a Highway Commercial Zoning District.

62.    Pastor Palmer submitted a Special Exception Use request to utilize 2501-A Moody Boulevard, Unit One, Flagler Beach, FL 32136, as a church despite its location in a Highway Commercial Zoning District. A true and correct copy of the Coastal Family Church Special Exception Package dated October 29, 2024, is attached hereto as **EXHIBIT N** and incorporated herein.

63.    The City of Flagler Beach issued a Public Hearing Notice providing the dates, times, and locations of the public hearings associated with Pastor Palmer's request for a Special Exception Use for Unit 1 of Flagler Square. A true and correct copy of the City of Flagler Beach Public Hearing Notice for Coastal Family Church's Special Exception Package is attached hereto as **EXHIBIT O** and incorporated herein.

18

64. Flagler Square-JAX, Inc. lists its mailing address as P.O. Box. 273760, Boca Raton, Florida 33427, and that was the address of record in April 2024.

65. The City of Flagler Beach sent, via certified mail, the public hearing notice to Flagler Square-JAX, Inc. at the address provided in its Annual Reports –  Flagler Square-JAX, Inc., P.O. Box 273760, Boca Raton, Florida 33427, meaning that HHH was provided full knowledge of the potential hearing well in advance of it. A true and correct copy of the United States Postal Service Certified Mail Return to Sender Receipt for Flagler Square-JAX, Inc. dated December 12, 2024, is attached hereto as **EXHIBIT P** and incorporated herein.

66. On November 18, 2024, Jason Pate, a member of Young & Pate II, Inc., the former owners of Unit 1 of Flagler Square, informed Donald Rosenthal, president of HHH, that a local church signed a letter of intent, signaling its interest in purchasing Unit 1 of Flagler Square.

67. Neither Harrison, HHH, any tenant, nor any resident of the City of Flagler Beach made any objection to the City of Flagler Beach regarding Pastor Palmer's requested Special Exception Use of Unit 1.

68. On November 20, 2025, HHH objected to the use of Unit 1 as a church via email to Jason Pate. Specifically, Donald Rosenthal, president of

HHH wrote that allowing a church to host religious worship services in a shopping center would spell the death of such a center.:

> Understandably, a shopping center that entertains this use is usually at the end of its useful life, as no retailers appreciate being paired with this type of tenant, and all national type leases contain this prohibition. Aside from the parking nightmare that a house of worship causes, it creates a dark hole in the center, as it brings no conducive retail traffic to a center.

A true and correct copy of the Don Rosenthal Email Communication dated November 20, 2024, is attached hereto as **EXHIBIT Q** and incorporated herein.

69.    In that same communication, on November 21, 2024, HHH, an entity directed by Harrison, offered to purchase Unit 1 of Flagler Square to prevent Coastal Family Church from acquiring it and using it as a religious house of worship.

70.    On December 12, 2024, the City of Flagler Beach City Commission approved Pastor Palmer's request for a special exception. A true and correct copy of the City of Flagler Beach Approval of Coastal Family Church's Request for Special Exception is attached hereto as **EXHIBIT R** and incorporated herein.

71.    Pastor Palmer worked with a seasoned real estate investor to acquire Unit 1 for Coastal Family Church.

72.    That investor, Zander Burger, was directly involved in the negotiations, due diligence, and acquisition process relating to Pastor Palmer's purchase of Unit 1 of Flagler Square. A true and correct copy of Zander Burger's Affidavit dated January 28, 2026, is attached hereto as **EXHIBIT S** and incorporated herein.

73.    During that process, Mr. Burger became aware that Dollar Tree Store, Inc., the lessee of Unit 2 of Flagler Square, expressly stated that it did not object to Coastal Family Church operating as a church in Unit 1 of the commercial condominium. (Ex. S.)

74.    Dollar Tree Stores, Inc., had required certain property restrictions be added to the "Declaration of Condominium for Flagler Square, a Condominium" ("Declaration").

**B.    The Declaration of Condominium for Flagler Square purports to prohibit use of the property for "public assembly," flea markets, bingo parlors, and consignment stores, though it has ignored every one of those purported restrictions.**

75.    This Declaration of Condominium was executed by Harrison on January 27, 2022, and governs Units 1, 2, and 3 of Flagler Square.

76.    The purpose the Declaration is to "submit the Lands described in this instrument and improvements on such Lands, to the condominium form of ownership and use, in the manner provided by CH. 718, Fla. Stat. [the Condominium Act]***." A true and correct copy of the Declaration of

Condominium for Flagler Square, a Condominium is attached hereto as **EXHIBIT T** and incorporated herein

77. The Declaration references the lease between Harrison and Dollar Tree Stores, Inc., and incorporates Dollar Tree's requested land use restrictions into the Declaration. (Ex. T, 12.)

78. Dollar Tree Store, Inc.'s requested land use restrictions are included in the "Declaration of Condominium for Flagler Square, a Condominium," as Exhibit 9 to the Declaration. A true and correct copy of the Dollar Tree Store Prohibited Uses is attached hereto as **EXHIBIT U** and incorporated herein.

79. Dollar Tree Store's prohibited uses include the following:

(1) A flea market or pawn shop;
…
(3) A bowling alley, billiard, pool or bingo parlor;
…
(5) A facility for the sale or rental of used goods (including thrift shops, secondhand or consignment stores);
…
(19) A banquet hall, auditorium or other place of public assembly;

(Ex. U.)

80. Harrison leases parts of Unit 3 to Fraternal Order of Police Lodge #171 and Junque in the Trunk – two tenants whose operations facially violate Dollar Tree Store, Inc.'s land use restrictions incorporated in the Declaration.

81.    Lodge #171 openly advertises that it hosts public assemblies, leases their facility for public assemblies, and even conducts weekly Bingo Nights open to the public. A true and correct copy of the Fraternal Order of Police Lodge #171 website and search is attached hereto as **EXHIBIT V** and incorporated herein.

82.    The Lodge's website states: "We offer our lodge for rental to various organizations making it an ideal space for Bingo events, HOA meetings, NRA Classes, and Law Shield classes." (Ex. V.)

83.    The same restrictions that prohibit public assembly also prohibits the operation of consignment stores at Flagler Square, yet Junque in the Trunk advertises itself as a consignment store. A true and correct copy of the Junque in the Trunk Website is attached hereto as **EXHIBIT W** and is incorporated herein ("Welcome to Junque in the Trunk, an upscale consignment and resale store in picturesque Flagler Beach, Florida.").

84.    The remaining tenants include a restaurant, legal office, and State of Florida Tax Collector's office – *none of which are retail stores* and none of which are permitted under Harrison's purported framing of the unit

85.    Harrison himself has also "either hosted, or allowed others to host Flea Markets, Car Shows, and other public assemblies in the Flagler Square parking lot." (Ex. D.)

23

86.    Harrison engaged in a selective, unreasonable, discriminatory, and thus, arbitrary, enforcement of the Declaration's restrictions, targeting Pastor Palmer's and Coastal Family Church's religious exercise, while ignoring other tenants' non-religious gatherings purportedly in violation of the Declaration. **It was this action that gave rise to the state-court injunction that prohibits Plaintiffs from gathering for religious worship services and it is infused with the same unconstitutional bias as Harrison's quest.**

87.    Harrison, himself, is certainly bound by the terms of the agreement yet is treating its own similarly situated conduct – entirely differently than Pastor Palmer's or Coastal Family Church's religious services.

88.    This disparate treatment renders the enforcement of the Declaration against Pastor Palmer, Coastal Family Church, its elders, and its religious congregants, arbitrary and unreasonable, and thus discriminatory.

89.    This discriminatory treatment renders the restrictive covenant void ab initio pursuant to Fla. Stat. §712.065, the "Extinguishment of Discriminatory Restrictions."

**C.    After HHH failed to purchase unit 1, Harrison sued Roderick Palmer as trustee of the trust for purchasing the property to enjoin him from using the property as a church.**

90.    Roderick Palmer made a more compelling offer for Unit 1 than HHH and successfully purchased Unit 1 on February 11, 2025. (Ex. G.)

24

91.    The property was placed in a trust for its sole beneficiary – Coastal Family Church.

92.    On April 3, 2025, Harrison's attorney sent a cease-and-desist letter to Young & Pate II, Inc., the former owners of Unit 1, demanding they stop using, or allowing the property to be used as a church because it violated Harrison's lease with Dollar Tree. A true and correct copy of the Flagler Square-JAX, Inc. Cease and Desist letter to Young and Pate, II, Inc. dated April 3, 2026, is attached hereto as **EXHIBIT X** and incorporated herein.

93.    On August 28, 2025, Harrison sued Pastor Palmer, alleging that his use of Unit 1 as a church violates Dollar Tree Store Prohibited Use #19, which prohibits use of any property for "public assembly." (Ex. H.)

94.    Specifically, Harrison alleges that use of Unit 1 as a Church would cause parking congestion if the church were to expand a capacity of 2,401 seats. (Ex. H, ¶14 ("The Defendant's planned use of the Premises would overwhelm the available parking at all times. There are presently 315 parking spaces available for tenants, their employees and customers in the entire Shopping Center. The Defendant's Floor Plan submitted to the City of Flagler Beach reflect seating for the church of 2,401. Simply put, there is not sufficient parking at the Shopping Center to in any way come close to accommodating the church during events that achieve full capacity of 2,401 people, or even events to come close to that." (emphasis in original)).)

**D.    The state-court injunction enjoining Plaintiffs from engaging in religious worship services and other constitutionally protected activities.**

95.    On September 24, 2025, Harrison sought, and the state court granted, a temporary injunction, barring Coastal Family Church from assembly, speech, and religious exercise for the duration of litigation. (Ex. I.)

96.    Specifically, on Thursday, January 22, 2026, at 3:17 PM, Judge Upchurch signed the TIO. (Ex. H.)

97.    On Friday, January 23, 2026, at 3:29 PM, the state court released its order, forcing the Plaintiffs to quickly shut down Coastal Family Church and cancel services in less than 48 hours.

98.    The state-court injunction prohibits Coastal Family Church's elders, and their religious congregants, from gathering (*i.e.*, assembling) in their church, engaging in religious exercise and religious worship, and teaching the Bible.

99.    Specifically, the state-court injunction provides:

> Until the resolution of this case Defendant is enjoined effective immediately from utilizing Unit 1 as a place of public assembly and is prohibited from allowing public assemblies put on by any entity to occur there. Defendant may elect to allow the property to be used for administrative purposes or for office space as long as the restrictive covenants are being followed. Also effective immediately, Defendant is enjoined from proceeding with any construction or modification to Unit 1 one which would facilitate public assemblies.

(Ex. I.)

26

100. On Saturday, January 24, 2026, as a result of the state-court injunction, Coastal Family Church and its elders were forced to inform its religious congregants that a Florida court had prohibited them from gathering together on Sunday for religious services. (Ex. D.)

101. **On Sunday, January 25, 2026, as a result of the state-court injunction, Coastal Family Church's religious services were canceled.** (Ex. D.)

102. That day the Elders and Pastors were forced to stand outside of Coastal Family Church and instruct its religious congregants, visitors, new believers, and those exploring Christianity for the first time, pursuant to a Florida court order, that they were not allowed to enter the church and worship. (Ex. D.)

103. To make matters worse, at the time Coastal Family Church's congregants would ordinarily gather for religious services on Sunday morning, a white HHH truck entered the parking lot accompanied by three police vehicles. (Ex. D.)

104. In a republic birthed on the will to be free and founded upon the idea of religious freedom, and in the free state of Florida, HHH called the police to ensure religious freedom was not exercised at Flagler Square. (Ex. D.)

105. Harrison and HHH had deemed Flagler Square a First Amendment free zone.

106. Further, Florida law enforcement officers had no jurisdiction to consider the Church's adherence to let alone to enforce the TIO, as "civil contempt is neither a felony nor a misdemeanor but a power of the courts." *Ducksworth v. Boyer*, 125 So.2d 844, 845 (Fla. 1960). After all, civil contempt – the only mechanism by which compliance with a. temporary injunction is ensured – "is in actuality a proceeding between the parties to the cause," *South Dade Farms, Inc. v. Peters*, 88 So.2d 891, 899 (Fla. 1956), is reserved to the inherent authority of the court, and is not a law enforcement matter.

## E. The state-court injunction substantially burdens Plaintiffs' religious beliefs and exercise.

107. Coastal Family Church's religious services and practices plainly qualify as the exercise of religion.

108. The state-court injunction is an order that shuts down Coastal Family Church's religious services.

109. The state-court injunction substantially burdens Coastal Family Church's, its elders', and its religious congregants' sincerely held religious practices – and plainly so.

110. "Religion motivates the worship services." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 613 (6th Cir. 2020) (emphasis added).

28

111.  Coastal Family Church, its elders, and its religious congregants are subject to The Great Commission, to go and make disciples of all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit, and teaching them to observe all that is commanded by God. *Matthew* 28:19-20 (ESV).

112.  The Great Commission requires that Coastal Family Church, its elders, and its congregants evangelize the Flagler Beach community, in Flagler Square, in Unit 1, and to worship as a single church body. *1 Corinthians* 12:12-13 (ESV) ("For just as the body is one and has many members, and all the members of the body, though many, are one body, so it is with Christ. For in one spirit we were all baptized into one body – Jews or Greeks, slaves or free – and all were made to drink of one Spirit.").

113.  Just as the trinity is three, yet one, so too is the body of Christ, requiring Coastal Family Church and its elders bring their flock together for church service each week.

114.  Coastal Family Church must meet, in person, requiring a particular location – Unit 1 – which is large enough to house its religious congregants in a weekly service. *Hebrews* 10:24-25 (ESV) ("And let us consider how to stir up one another to love and good works, not neglecting to meet together, as is the habit of some, but encouraging one another, and all the more as you see the Day drawing near.")

115. Coastal Family Church and its elders sincerely believe, and the Constitution protects their right to believe, that no community is off-limits to the Gospel.

116. This conviction extends to the City of Flagler Beach.

117. This conviction further extends to Flagler Square.

118. As is recorded in *Mark* 16:15 (ESV), Jesus dispelled all geographic boundaries associated with evangelism commanding the apostles, "Go into all the world and proclaim the gospel to the whole creation."

119. Courts define "a substantial burden on free exercise" as "one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires." *Warner v. City of Boca Raton*, 887 So.2d 1023, 1033 (Fla. 2004) (citing *Mack v. O'Leary*, 80 F.3d 1175, 1178 (7th Cir. 1996)).

120. The Supreme Court has made clear that where the government permits other activities to proceed, but restricts religious exercise, there is a substantial burden on free exercise. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021).

121. Coastal Family Church, its elders, and its religious congregants, suffer from the later ailment – a prohibition of conduct their faith compels, coupled with disparate treatment that further defines the state-court injunction as a substantial burden.

**F.    Pastor Palmer sought emergency relief from every available judicial forum to preclude having to bring his federal claims here, but has no recourse, so Plaintiffs are left to appeal to this Court's equitable jurisdiction to obtain protection.**

122.    Given the blatant unconstitutionality of the state-court injunction, along with its many fatal flaws, Pastor Palmer sought immediate emergency relief from the Circuit Court of the 7th Judicial Circuit in and for Flagler County, Florida.

123.    The Court did not respond to Pastor Palmer's request for relief.

124.    Pastor Palmer then sought emergency relief from the Florida Fifth District Court of Appeal.

125.    On January 30, 2026, the Fifth District initially "granted in part solely to allow this Court to fully consider the merits of the matters raised in the motion." (Ex. B.)

126.    The Fifth District's Order provides:

> If this Court determines the temporary injunction before us was erroneously issued, the legal and actual harm of being prohibited the right to assemble together and freely exercise their sincerely held religious beliefs would be grievous and reach constitutional dimension. Being deprived of this fundamental right – for even one additional Sunday – would do irreparable harm to Appellant and its congregants.

(Ex. B.)

127.    The Fifth District quickly changed its tune, issuing another Order on February 13, 2026, denying Pastor Palmer's motion for a stay and

reinstituting the state-court injunction which prohibits Coastal Family Church, and its religious congregants from assembly, speech, and religious exercise. (Ex. C.)

128. The Fifth District abandoned its opinion on prior restraints and First Amendment rights, instead stating:

> Having now fully considered Appellant's argument and the limited record before us, which does not include a transcript of proceedings in the trial court or other information that may be pertinent to our review, we are unable to conclude that Appellant has met his burden at this stage to permit this Court to stay enforcement of the temporary injunction issued by the trial court.

(Ex. C.)

129. Ultimately, on February 13, 2026, the Fifth District denied Pastor Palmer's "Emergency Motion for Stay Pending Review," leaving Coastal Family Church and its elders, yet again, with less than 48 hours to cancel religious services, and a single day to find an alternate venue for a Valentines Day, Christian marriage event planned for 160 participants.

130. **On February 15, 2026, for the <u>second time</u>, Coastal Family Church and its elders were forced to cancel in-person religious services and stand outside the church to inform congregants, new visitors, and possibly even those exploring Christianity for the first time, that a Florida court order prohibits assembly, speech, and religious exercise at the Church.**

131.    On February 15, 2026, Florida police, again, patrolled the parking lot of Coastal Family Church during the time the Church would ordinarily conduct religious services.

132.    To make matters even worse, the state-court injunction descended into what can only be described as a modern version of Sophocles' *Antigone*.[3]

133.    That is, in early February a congregant of Coastal Family Church passed away, and – as a result of the state-court injunction – Pastor Palmer was forced to inform the family that they were unable to hold a memorial service at the church. Thus, not only has the state-court injunction prohibited Coastal Family Church and its religious congregants from religious services, but now it is prohibiting them from exercising their religious beliefs to properly mourn the dead.

134.    As in *Antigone*, there is now "tension between the King's law – a formal edict that prohibited the burial of Antigone's brother Polynices – and the unwritten law of the Gods that mandated a proper burial so as to fulfill a duty to honor and mourn the dead." *United States v. Hoffman*, 436 F. Supp. 3d 1272, 1278, n.3 (D. Az. 2020).

135.    The only difference is that Pastor Palmer faces not a King's edict, but the state-court injunction which effectively bars all assembly, speech, and

---

[3] *See* Sophocles, *Antigone*, *The Complete Greek Tragedies*, D. Greene & R. Lattimore 162-209 (E. Wyckoff ed. 1954).

religious exercise, including the proper mourning of the dead, at Coastal Family Church.

136.    After the Fifth District reinstituted the state-court injunction, Pastor Palmer sought emergency relief from the Supreme Court of Florida.

137.    **On February 22, 2026, for the <u>third time</u>, Coastal Family Church and its elders were forced to, again, shutdown Coastal Family Church.**

138.    Coastal Family Church and its elders resorted to live streaming religious services, despite being uncertain if the state-court injunction permits a small group of elders, pastors, and congregants to enter the facility to broadcast a remote religious service.

139.    Even if a small group of people were authorized to enter the facility to broadcast a remote religious service, "who is to say that every member of the congregation has access to the necessary technology to make that work." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020).

140.    Moreover, a Florida circuit court has no authority to "say that every member of the congregation must see it as an adequate substitute for what it means when 'two or three gather in my Name.'" *Id.* (quoting *Matthew* 18:20).

141. As the United States Supreme Court has recognized, "remote viewing [of religious worship services] is not the same as personal attendance." *Catholic Diocese*, 592 U.S. at 19.

142. Coastal Family Church and its religious congregants "reinforce their faith and their bonds with the faithful through religious assemblies." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 912 (W.D. Ky. 2020).

143. Indeed, "the Greek word translated 'church' in our English versions of Christian scriptures is the word, 'ekklesia,' which literally means 'assembly.'" *Id.* They lost that eternally significant assembly because of the state-court injunction.

144. Of course, "[i]t is true that [Coastal Family Church and its religious congregants] could believe in everything Easter teaches from their homes on Sunday. So too could the pilgrims before they left Europe. But the Pilgrims demanded more than that. And so too does the Free Exercise Clause." *On Fire Christian Ctr., Inc.*, 453 F. Supp. 3d at 912. The First Amendment's "promise is as important to the minister as for those ministered to, as vital to the shepherd as to the sheep. And it is as necessary now as when the Mayflower met Plymouth Rock." *Id.*

145. Coastal Family Church, its elders, and its religious congregants have sacrificed that promise because of the state-court injunction.

146. On February 23, 2026, the Florida Supreme Court issued its disposition decision denying jurisdiction over the appeal. The decision provides:

> The "Emergency Motion for Stay Pending Review in the Fifth District Court of Appeal," is treated as a petition to invoke the Court's all writs jurisdiction. The petition is dismissed for lack of jurisdiction because the Petitioners have failed to cite an independent basis that would allow the Court to exercise its all writs authority and no such basis is apparent on the face of the petition. *See Williams v. State*, 913 So. 2d 541, 543-44 (Fla. 2005); *St. Paul Title Ins. Corp. v. Davis*, 329 So. 2d 1304, 1305 (Fla. 1980).

(Ex. E.)

147. While Pastor Palmer believed the Emergency Motion clearly articulated the Supreme Court of Florida's jurisdiction over the issue, that same day Pastor Palmer filed an Amended Emergency Motion for Stay Pending Review in the Fifth District Court of Appeal, which more thoroughly articulated the Supreme Court's jurisdiction over the case.

148. On February 24, 2026, the Supreme Court of Florida issued a letter noting that the Court would not respond to the Amended motion given that the Church's case was immediately closed after the Court issued its disposition decision.

149. On February 25, 2026, given that his previous case was closed, Pastor Palmer attempted to open a new case at the Supreme Court of Florida,

36

filing a new Emergency Relief from the state-court injunction from the Supreme Court of Florida.

150. On February 26, 2026, the Supreme Court of Florida manually docketed the Emergency Motion under the previously closed Supreme Court of Florida case number.

151. **On March 1, 2026, for the <u>fourth time</u>, Coastal Family Church and its elders were forced to shut down Coastal Family Church, resort to live streaming their religious service, and to deny congregants, new visitors, and possibly even individuals exploring Christianity for the first time, access to Coastal Family Church to worship the Lord.**

152. **On March 8, 2026, for the <u>fifth time</u>, Coastal Family Church and its elders were forced to shut down Coastal Family Church, resort to live streaming their religious service, and to deny congregants, new visitors, and possibly even individuals exploring Christianity for the first time, access to Coastal Family Church to worship the Lord.**

153. **On March 15, 2026, for the <u>sixth time</u>, Coastal Family Church and its elders were forced to shut down Coastal Family Church, resort to live streaming their religious service, and to deny congregants, new visitors, and possibly even individuals exploring**

**Christianity for the first time, access to Coastal Family Church to worship the Lord.**

154. **On March 22, 2026, for the** <u>**seventh time**</u>**, Coastal Family Church and its elders were forced to shut down Coastal Family Church, resort to live streaming their religious service, and to deny congregants, new visitors, and possibly even individuals exploring Christianity for the first time, access to Coastal Family Church to worship the Lord.**

155. The Supreme Cout of Florida has not yet responded to Pastor Palmer's motion.

G. **Coastal Family Church, its elders, and its religious congregants have suffered, are suffering, and will continue to suffer irreparable harm due to the state-court injunction.**

156. This Court's intervention is required to eliminate the unconstitutional and unconscionable infringements on religious liberty subjected upon them by the state-court injunction.

157. As a result of the state-court injunction, the elders have been forced to close the doors of Coastal Family Church and Plaintiffs cannot gather for religious worship services and religious assembly.

158. As a result of the state-court injunction, the elders have been forced, on an emergency basis, to inform each congregant of Coastal Family

38

Church that a court in Florida had prohibited them from gathering together for religious worship services.

159.    As a result of the state-court injunction, the elders have been forced to inform their congregants that a Florida court's order now prohibits them from gathering for the reading of Scripture, prayer, the signing of hymns, communal worship, communion, fellowship, or any other form of religious assembly.

160.    As a result of the state-court injunction, the elders have been forced to inform the family of a congregant that passed away, that they are unable to hold a memorial service at the church.

161.    As a result of the state-court injunction, the elders have been forced to relocate a Christian marriage event scheduled for February 14, 2026, at the church planned for approximately 160 individuals who reserved and confirmed to attend the event at the Church.

162.    As a result of the state-court injunction, the elders were forced to relocate or cancel Men's breakfast events, young adult ministry meetings, youth ministry meetings, weekly Bible school programs, and Bible studies.

163.    As a result of the state-court injunction, the elders have been unable to meet in the Church to rule over the Church.

164. As a result of the state-court injunction, the elders have been forced to sacrifice seven Sundays of cherished religious worship services and have lost that eternally significant time.

165. As a result of the state-court injunction, Florida police officers have showed up to the Church to enforce the state-court injunction on at least two occasions.

166. The free speech, assembly, and religious exercise rights of Coastal Family Church, its elders, and its religious congregants have already been harmed and significantly chilled by the state-court injunction.

167. Plaintiffs' irreparable harm is continuing and, in fact, increasing as each Sunday passes, especially as Easter Sunday (April 5, 2026) approaches, which is arguably the most spiritually significant holy day for Christians.

168. If Coastal Family Church, its elders, or its religious congregants attempt to enjoy their rights to assembly, speech, or religious exercise, they face a credible threat of the extraordinary weight of contempt, and the credible threat of subjecting Pastor Palmer to contempt resulting from the state-court injunction.

169. If the elders were to speak or teach in their church, assemble as a congregation, or engage in religious exercise, it would cause their Senior Pastor and church to be held in contempt of court pursuant to the state-court injunction.

40

170.  No person – including elders of a church – should be forced to choose between speech, assembly, and/or religious exercise and contempt.

171.  This is axiomatically opposed to the Supreme Court's ruling in *Everson*, in which it stated, "No person can be punished for entertaining or professing religious beliefs or … for church attendance." *Everson*, 330 U.S. at 16.

### COUNT I
### THE STATE-COURT ORDER VIOLATES PLAINTIFFS' RIGHTS TO FREE EXERCISE OF RELIGIOUS UNDER THE FIRST AMENDMENT

172.  Plaintiffs hereby reallege and adopt the allegations in paragraphs 1-171 above as if fully set forth herein.

173.  The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

174.  Plaintiffs reallege their detailed their sincerely held religious beliefs cited *supra* as if fully set forth herein.

175.  Additionally, Plaintiffs have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, *Hebrews* 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times and peril and crisis. Indeed, the entire purpose of the Church is to assemble together to worship Almighty God.

176. The state-court injunction, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting religious gatherings.

177. The state-court injunction, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or to act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the extraordinary weight of contempt.

178. The state-court injunction, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the state-court injunction and its sincerely held religious beliefs.

179. The state-court injunction, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of believers, the mourning of the dead, and the worshiping of the Lord.

180. The state-court injunction, on its face and as applied, is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious beliefs, speech, and assembly of Plaintiffs.

181. The state-court injunction, on its face and as applied, constitutes a substantial burden on Plaintiffs' sincerely held religious beliefs.

182. The State lacks a compelling, legitimate, or rationale interest in the state-court injunction which applies a different standard to Coastal Family Church than it does any other tenants of Flagler Square.

183. Even if the state-court injunction's restrictions on religious gatherings were supported by a compelling interest, which they are not, the state-court injunction is certainly not the least restrictive means to accomplish the Court's purported interest.

184. The state-court injunction, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

185. The state-court injunction, on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

186. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

Wherefore, Plaintiffs respectfully pray for relief against the state-court injunction as hereinafter set forth in its prayer for relief.

## COUNT II
## THE STATE-COURT ORDER VIOLATES PLAINTIFFS' RIGHTS TO PEACEABLY ASSEMBLE UNDER THE FIRST AMENDMENT

187. Plaintiffs hereby reallege and adopt the allegations in paragraphs 1-171 above as if fully set forth herein.

188. The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging the rights of the people to peaceably assemble.

189. The state-court injunction, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' right to assemble.

190. "The term 'prior restraint,' at common law, referred to a system of unreviewable administrative censorship or licensing. But the concept has not been so confined. In a long line of cases beginning with *Near v. Minnesota*, 283 U.S. 69 [](1931), the Supreme Court has extended the meaning of prior restraints to include judicial orders that have been considered prior restraints are orders restraining extrajudicial comment about a pending or anticipated trial." *In re Halkin*, 598 F.2d 176, 183 (D.C. Cir. 1979), overruled on other grounds by *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984); *see also Organization for a Better Austin v. Keefe*, 402 U.S. 415, 416 (1971) ("We granted the writ in this case to consider the claim that an order of the Circuit Court of Cook County, Illinois, enjoining petitioners from distributing leaflets anywhere in the town of Westchester, Illinois, violates petitioners' rights under the Federal Constitution.")

191. The state-court injunction, on its face and as applied, unconstitutionally discriminates against Plaintiffs on the basis of their viewpoint.

44

192. The state-court injunction, on its face and as applied, unconstitutionally discriminates on the basis of content.

193. The Court lacks a compelling, legitimate, or rational interest in the state-court injunction's application of differential standards for Plaintiffs than the other tenants of Flagler Square who are non-religious entities.

194. The state-court injunction, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the order.

195. The state-court injunction, on its face and as applied, does not leave open ample alternative channels of communication for Plaintiffs.

196. The state-court injunction, on its face and as applied, is irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected right to assemble.

197. The state-court injunction, on its face and as applied, is unconstitutionally vague and overbroad as it chills and abridges the free assembly rights of Plaintiffs.

198. On its face and as applied, the state-court injunction's violation of Plaintiffs' right to free assembly has caused, is causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

199.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

Wherefore, Plaintiffs respectfully pray for the relief against the state-court injunction as hereinafter set forth in its prayer for relief.

**COUNT III**
**THE STATE-COURT ORDER VIOLATES PLAINTIFFS' RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT**

200.   Plaintiffs hereby reallege and adopt the allegations in paragraphs 1-171 above as if fully set forth herein.

201.   The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' freedom of speech.

202.   The state-court injunction, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

203.   "When employed against prior restraints, free speech protections are almost insurmountable." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 587 (1980) (Brennan, J., concurring).

204.   "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin*, 402 U.S. at 418 (citing *Carroll v. Princess Anne*, 393 U.S. 175, 181 (1968); *Bantam Books*, 372 U.S. at 70.

46

205. The Court "thus carries a heavy burden of showing justification for the imposition of such a restraint." *Organization for a Better Austin*, 402 U.S. at 418.

206. The state-court injunction, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

207. The state-court injunction, on its face and as applied, unconstitutionally discriminates on the basis of content.

208. The Court lacks a compelling, legitimate, or rational interest in the state-court injunction application of differential standards for Plaintiffs than the other tenants of Flagler Square who are non-religious entities.

209. The state-court injunction, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the order.

210. The state-court injunction, on its face and as applied, does not leave open ample alternative channels of communication for Plaintiffs.

211. The state-court injunction, on its face and as applied, is irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech.

212. The state-court injunction, on its face and as applied, is unconstitutionally overbroad as it chills and abridges Plaintiffs' free speech rights.

213. On its face and as applied, the state-court injunction's violation of Plaintiff's rights to free speech has caused, is causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

214. Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

Wherefore, Plaintiffs respectfully pray for the relief against the state-court injunction as hereinafter set forth in its prayer for relief.

## COUNT IV
## THE STATE COURT ORDER VIOLATES THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT

215. Plaintiffs hereby reallege and adopt the allegations in paragraphs 1-171 above as if fully set forth herein.

216. The Establishment Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from establishing a religion.

217. The Establishment Clause also prohibits excessive government entanglement with religion.

218. Further, the Establishment Clause prohibits the government from showing hostility towards religion and prohibits showing favoritism towards one religious sect over another or between non-religion and religion.

219. The state-court injunction's prohibition on religious services and religious gathering at Flagler Square violates the Establishment Clause because the State of Florida has shown blatant hostility towards Christians and churches who must worship in person.

220. The Establishment Clause does not permit the State of Florida, or its Courts, to dictate under penalty of contempt, the manner, style, form, practices, or sacraments of religious worship and thereby impose its own version of religious worship, just as it may not choose a specific faith group to exclude from the freedoms bestowed upon them by the First Amendment.

221. In fact, as the Supreme Court has unequivocally stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, **religion**, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added).

222. The State, through the Court, is purporting to prescribe what shall be orthodox in matters of religious worship, while showing hostility towards certain religious beliefs, and is thus running roughshod over the Establishment Clause.

223. The state-court injunction, on its face and as applied, displays impermissible hostility towards religious gatherings.

224. The state-court injunction, on its face and as applied, purports to inform religious adherents and believers how they may choose to worship, assemble together, or engage in their religious freedoms.

225. The state-court injunction, on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

Wherefore, Plaintiffs respectfully pray for the relief against the state-court injunction as hereinafter set forth in their prayer for relief.

## COUNT V
## THE STATE-COURT ORDER VIOLATES PLAINTIFFS' RIGHT TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

226. Plaintiffs hereby reallege and adopt the allegations in paragraphs 1-171 above as if fully set forth herein.

227. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

228. "It is no longer open to doubt that the liberty of the press and speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action. It was found impossible to conclude that this essential personal liberty of the citizen was left unprotected by the general guaranty of fundamental rights of person and property." *Near*, 283 U.S. at 707.

50

229. "The principles enunciated in *Near* were so universally accepted that the precise issue did not come before us again until *Organization for a Better Austin v. Keefe,* 402 U.S. 415 [](1971). There the state courts had enjoined the petitioners from picketing or passing out literature of any kind in a specific area." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 557-58 (1976).

230. The state-court injunction, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets Plaintiffs' religious gatherings for unequal treatment.

231. The state-court injunction, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to treat Plaintiffs differently from other similarly situated businesses and non-religious entities at Flagler Square on the basis of the content and viewpoint of Plaintiffs' gatherings.

232. The state-court injunction, on its face and as applied, impermissibly discriminates between certain non-religious gatherings and religious gatherings.

233. The State lacks a compelling, legitimate, or rational interest in the state-court injunction's application of different standards for Plaintiffs and religious gatherings than other non-religious entities.

51

234. The state-court injunction, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served.

235. The state-court injunction, on its face and as applied, does not have a rational basis.

236. The state-court injunction, on its face and as applied, is irrational and unjustifiable and imposes irrational and unjustifiable restrictions on Plaintiffs' religious gatherings.

237. The state-court injunction, on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

238. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

Wherefore, Plaintiffs respectfully prays for relief against the state-court injunction as hereinafter set forth in its prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Coastal Family Church prays for relief as follows:

A.      That the Court issue a Temporary Restraining Order restraining and enjoining the state-court injunction, the Circuit Court of the 7th Judicial Circuit in and for Flagler County, Florida, all State officers, agents, employees, and all other persons in active concert or participation with them, from

enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the state-court injunction or any other order to the extent any such order serves as a prior restraint to or otherwise prohibits speech, assembly, or religious exercise at Coastal Family Church. **To be clear, Coastal Family Church merely seeks a TRO preventing enforcement of the state-court injunction prohibiting religious assembly and prohibiting Coastal Family Church, its elders, its pastors, and its religious congregants from being subject to civil contempt for hosting assembly, speech, and religious exercise at Coastal Family Church.** In making such a request, Plaintiffs merely seek to be treated equally with other businesses operating in Flagler Square, and Harrison who has hosted public assembly or allowed others to host public assembly at Flagler Square;

B.     That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgement, restraining and enjoining, the state-court injunction, the Circuit Court of the 7th Judicial Circuit in and for Flagler County, Florida, all State officers, agents, employees, and all other persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the state-court injunction or any other order to the extent any such order serves as a prior restraint to or otherwise prohibits speech, assembly, or religious exercise at Coastal Family Church;

C.     That this Court render a declaratory judgment, declaring that (1) that the state-court injunction violates the Free Speech Clause, Free Exercise Clause, Free Assembly Clause, and Establishment Clause of the First Amendment of the United States Constitution; and (2) the state-court injunction violates the Fourteenth Amendment of the United States Constitution;

D.     That this Court declare Plaintiffs the prevailing parties and award Plaintiffs the costs of this action, including reasonable attorney's fees, in accordance with 42 U.S.C. §1988;

E.     Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated this 25th Day of March in the Year of our Lord, 2026.

Respectfully submitted,

/s/ Avery B. Hill
Matthew D. Staver (FBN 0701092)
Horatio G. Mihet (FBN 0611131)
Danile J. Schmid*
Avery B. Hill (FBN 1059519)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
court@LC.org
hmihet@LC.org
ahill@LC.org

54

55

*Pro hac vice applications pending

Attorneys for Plaintiffs

55

## INDEX OF EXHIBITS

| Exhibit # | Exhibit Name |
|---|---|
| A | Pastor Palmer's Emergency Motion for Relief from the Court |
| B | Fifth District Court of Appeal Order dated January 30, 2026 |
| C | Fifth District Court of Appeal Order dated February 13, 2026 |
| D | Pastor Palmer's Declarations |
| E | Supreme Court of Florida Disposition Decision dated February 23, 2026 |
| F | Don Rosenthal Email Communication dated November 26, 2024 |
| G | Commercial Contract for Sale of 2501-A Moody Boulevard, Unit One, Flagler Beach, FL 32136 |
| H | Harrison's Complaint for Injunctive Relief and Declaratory Judgement dated August 28, 2025 |
| I | Order Granting Harrison's Motion for Temporary Injunctive Relief Issued January 23, 2026 |
| J | Harrison's Motion for Temporary Injunctive Relief |
| K | Pastor Palmer's Response in Opposition to Motion for Temporary Injunctive Relief |
| L | Harrison's Reply to Response in Opposition to Motion for Temporary Injunctive Relief |
| M | Transcript of Hearing Regarding Motion for Temporary Injunctive Relief |
| N | Coastal Family Church Special Exception Package dated October 29, 2024 |
| O | City of Flagler Beach Public Hearing Notice for Coastal Family Church Special Exception Package |
| P | United States Postal Service Certified Mail Receipt Return to Sender for Flagler Square-JAX, Inc. dated December 12, 2024 |
| Q | Don Rosenthal Email Communication dated November 20, 2024 |
| R | City of Flagler Beach Approval of Coastal Family Church Request for Special Exception |
| S | Zander Burder Affidavit dated January 28, 2026 |
| T | Declaration of Condominium for Flagler Square, a Condominium |
| U | Dollar Tree Store Prohibited Uses |
| V | Fraternal Order of Police Lodge #171 Website and Search |
| W | Junque in the Trunk Website |
| X | Flagler Square-JAX, Inc. Cease and Desist Letter to Young and Pate, II, Inc. dated April 3, 2025 |

## **VERIFICATION**

I, Jerald W. Tilton, am over the age of eighteen years and an elder of Coastal Family Church, one of the named Plaintiffs in this action. The statements and allegations that pertain to me and/or Plaintiff Coastal Family Church or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: March 24, 2026.

/s/ Jerald W. Tilton

## VERIFICATION

I, Maria A. Tilton, am over the age of eighteen years and an elder of Coastal Family Church, one of the named Plaintiffs in this action. The statements and allegations that pertain to me and/or Plaintiff Coastal Family Church or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: March 24, 2026.

/s/    Maria A. Tilton

## VERIFICATION

I, Valerie A. Palmer, am over the age of eighteen years and an elder of Coastal Family Church, one of the named Plaintiffs in this action. The statements and allegations that pertain to me and/or Plaintiff Coastal Family Church or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: March 24, 2026.

/s/    Valerie A. Palmer

59

## CERTIFICATE OF SERVICE

I hereby certify. That a true and correct copy of the foregoing was filed

via the Court's ECF filing system and will be served upon the named

Defendants in accordance with Federal Rule of Civil Procedure 4.

Dated this 25th Day of March in the Year of our Lord, 2026.

Respectfully submitted,

/s/ Avery B. Hill
Avery B. Hill (FBN 1059519)

60